**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br>JORGE CRUZ-HERNANDEZ,<br><br>Defendant | Criminal Action No. 18-347 (CKK) |

**MEMORANDUM OPINION**
(November 18, 2019)

This matter comes before the Court upon the [40] renewed motion of Defendant Jorge Cruz-Hernandez to revoke his pretrial detention orders and release him pursuant to a bed to bed transfer for residential substance abuse treatment and/or pursuant to the High Intensity Supervision Program with GPS monitoring. Defendant made his initial appearance before Magistrate Judge Michael Harvey on November 30, 2018 and was ordered to be held in temporary detention for three days. On December 4, 2018, Magistrate Judge Robin Meriweather ordered that Defendant's detention be extended and that he be held without bond pending trial. She later issued a Memorandum setting forth her written findings of fact and statement of reasons for the detention. Defendant filed his first motion for revocation of his pretrial detention on December 12, 2018, which the Court denied on December 17, 2018. And, on October 30, 2019, Defendant filed a renewed request for revocation of his pretrial detention to which the Government filed an opposition. Upon consideration of the parties' submissions, case law, and applicable statutory authority, the Court shall DENY Defendant's motion for the reasons expressed below.

## I. BACKGROUND

This Court denied a prior motion for revocation of Defendant's pretrial detention on December 17, 2018. ECF No. 14. And, Defendant points to no factual changes since that denial which would alter the Court's decision. As such, much of this Memorandum Opinion restates the facts and reasoning laid out in the Court's prior decision.

Defendant has been charged with unlawfully, knowingly, and intentionally possessing with the intent to distribute a Schedule II controlled substance, methamphetamine, in the amount of fifty grams or more. 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(viii). Superseding Indictment, ECF No. 8.

According to the Government, on September 21, 2018, security officers at a UPS store in Tempe, Arizona contacted police about a suspicious package which they believed contained methamphetamines. Store employees had become suspicious of the package based on the behavior of the shipper, later identified as Defendant, who had sweated, avoided eye contact, stuttered, and paid with a pre-paid card.

Police investigated the approximately four-pound package, which had an odor consistent with and field-tested positive for methamphetamine. The shipping label identified the sender as "Jesse Cruz" with a telephone number of (202) 677-0282 and the recipient as "Steve Silantra" with the same telephone number and a delivery address of 5120 Sargent Rd., NE, # 209 in Washington, D.C.  Law enforcement traced the single telephone number to Defendant; the telephone number also listed the Sargent Road address as its registered address. Law enforcement later verified the Sargent Road address as Defendant's address.

Further connecting Defendant to the package, a UPS store employee identified Defendant as the shipper from a photo lineup. Additionally, surveillance from a nearby store shows an

individual resembling Defendant purchasing the same type of prepaid card that was used to pay

for shipping at the UPS store. While an employee of the store failed to identify Defendant as the

purchaser of the prepaid card, Defendant's cellphone records show that he placed a call to

customer service for the company which issued the prepaid card when the card was purchased.

Finally, on September 24, 2018, a man by the name of "Jorge Hernandez" called UPS to inquire

about the package. The phone number and email which "Jorge Hernandez" provided were both

verified as belonging to Defendant.

On October 23, 2018, agents for the Metropolitan Police Department and the Drug

Enforcement Administration executed a search warrant at the Sargent Road address. When

officers knocked, Defendant answered the door. In a bedroom with identifying materials

belonging to Defendant, agents found: packaging materials; two digital scales; a package of

approximately 51 grams of methamphetamines, which later tested positive for

methamphetamines with a high 98% purity level; a package of approximately 179 grams of

methamphetamines, which later tested positive for methamphetamines with a high 96% purity

level; 1.5 gallons of Gamma Hydroxybutyric Acid; and a safe containing $16,000.

## II.    LEGAL STANDARD

The Court reviews de novo whether there are conditions of release that will "reasonably

assure the appearance of Defendant as required and the safety of any other person and the

community." 18 U.S.C. § 3142(e). Because Defendant has been indicted for an offense for

which a maximum term of imprisonment for life is prescribed in the Controlled Substances Act,

there is a rebuttable presumption that no conditions or combination of conditions will reasonably

assure the appearance of the person and the safety of the community. *See* 18 U.S.C. §

3142(e)(3)(A). To determine whether Defendant has overcome this presumption, the Court

examines the available information that touches upon: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community. *See* 18 U.S.C. § 3142(g). The Court determines that the factors weigh in favor of Defendant remaining incarcerated.

### III.    BALANCE OF THE FACTORS

Defendant has several arguments as to why he has rebutted the presumption that no set of conditions will reasonably assure the safety of the community. First, Defendant argues that he has been detained and presumed to have not used illicit drugs for approximately twelve months. Defendant further explains that evaluations by a federal medical facility and by the District of Columbia Pretrial Services Agency have found Defendant to be in need of substance abuse treatment. Second, Defendant contends that discovery has produced credible evidence that there was an additional occupant of the apartment in which the drugs and drug paraphernalia were allegedly found. Third, Defendant explains that his family is supportive of his efforts at recovery and that he does not have a valid passport or driver's license. In considering Defendant's arguments, the Court finds that Defendant has not presented any evidence or argument which meaningfully changes the Court's analysis from its prior denial of revocation. The Court further concludes that Defendant has not rebutted the presumption that there are no conditions or combinations of conditions of release that will reasonably assure the safety of the community.

### A.  Nature and Circumstances of the Offense Charged

Defendant does not dispute that the offense charged involves a Schedule II controlled substance. Congress has already determined that this is a serious charge which should trigger a

statutory presumption of detention. *See* 18. U.S.C. § 3142(e)(3)(A). Both the quantity and the purity of the drugs found suggest that the drugs were intended for distribution rather than for personal use. Accordingly, this factor weighs in favor of detention.

### B. Weight of the Evidence against Defendant

The Court finds that there is ample evidence to support the charge against Defendant. When officers arrived at Defendant's residence to conduct the search pursuant to their warrant, Defendant was present at the residence and answered the door. The ensuing search recovered approximately 230 grams of methamphetamines, which tested positive for methamphetamines with purity levels ranging from 98% to 96%. The search also recovered packaging materials, digital scales, a safe containing $16,000, and 1.5 gallons of Gamma Hydroxybutyric Acid, all of which indicate that Defendant intended to distribute the drugs rather than personally use them.

In his renewed Motion, Defendant contends that evidence presented during discovery establishes that there were three occupants of the apartment where the drugs and drug paraphernalia were found, presumably casting doubt on Defendant's involvement. However, there is evidence that it was Defendants' bedroom which contained the illicit materials. The bedroom in question contained Defendant's passport, bank and credit cards as well as checks bearing his name, and a prescription bottle bearing his name. The package containing 51 grams of methamphetamines was found in the nightstand of that bedroom; the package containing 179 grams of methamphetamines was hidden in a stereo speaker in that bedroom; 1.5 gallons of suspected Gamma Hydroxybutyric Acid was found in the dresser of that bedroom; $16,000 was found in a safe in the closet of that bedroom; and the digital scales and packaging material were also found in that bedroom. As such, even if multiple people resided in the Sargent Road apartment, all of the seized material was found in a bedroom which contained multiple

identifying items belonging to Defendant. Accordingly, the Court concludes that the evidence is strong, and this factor weighs in favor of pretrial detention.

### C. History and Characteristics of Defendant

The Court concludes that the third factor also weighs in favor of detention, even if some of Defendant's history and characteristics support a finding of release. In support of release, Defendant is a lifelong resident of the Washington, D.C. area with community ties. Additionally, he has the support of his family. Defendant currently does not possess a valid passport or driver's license. Defendant has never been charged with possession of a weapon and does not have a history of violence. Defendant has worked in the past for Uber and Lyft and he previously established a business buying, selling, and repairing cars. Defendant further argues that his past criminal conduct has been tied to his substance abuse disorder, which would be helped if Defendant were released for substance abuse treatment.

However, the factors favoring release are outweighed by the factors favoring detention. Defendant is a recidivist with five prior convictions. Pretrial Services Report, ECF No. 7. While these convictions are primarily for non-violent misdemeanors, they include a 2016 conviction for possession of a controlled substance, methamphetamine, and possession of drug paraphernalia. *Id*. The Court also considers the Government's proffer of Defendant's uncharged conduct, specifically his attempt to mail approximately four pounds of methamphetamine to himself. This amount of methamphetamine suggests participation in drug trafficking, not personal use.

While Defendant has successfully completed probation in the past, his probation for a 2006 conviction for driving while intoxicated was revoked when he was rearrested for another driving while intoxicated. *Id.* When revoked, he was sentenced to serve 36 days in jail and to pay a fine of $600. *Id.* Additionally, while on pretrial release in the Superior Court for the District of

Columbia for this offense, Defendant breached his conditions of supervised release by testing positive for methamphetamines and/or amphetamines on four different occasions.

Based on Defendant's continued access to methamphetamines while he was initially on release, as well as a failure to abide by release conditions in the past, the court finds that Defendant's history and characteristics weigh in favor of continued detention.

### D. Danger to the Community

There is substantial evidence which suggests that Defendant is a danger to the community. Agents recovered methamphetamine and other items indicative of drug trafficking in Defendant's apartment. Additionally, the Government proffered evidence of Defendant's alleged attempt to ship a large quantity of methamphetamines to his own residence in Washington, D.C. As Magistrate Judge Meriweather explained, "[t]he introduction of drugs into the community can cause serious harm to both its users and to innocent individuals who may be affected by those who take this drug and commit violence upon them." Detention Memorandum, ECF No. 9, 8-9. The Bail Reform Act's statutory language and legislative history demonstrate Congressional intent to equate drug trafficking with dangerousness. *See United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985); *see also United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985) (explaining that the Bail Reform Act's "statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community"). And, here, Defendant is charged with possession with the intent to distribute approximately 230 grams of methamphetamine with purity levels of 96%-98%. This quantity and purity of methamphetamine, in conjunction with the scales, packaging material, and large amount of money found at Defendant's residence, suggest the sale and trafficking of drugs, not personal use.

Despite this evidence, Defendant argues that the likelihood that he will be a danger to the community by either continuing to abuse drugs or by trafficking drugs is significantly reduced if Defendant is transferred bed to bed from the central detention facility to a residential treatment facility for 30 days with the possibility of release to the community with the High Intensity Supervision program subsequent to the 30 days. The Court does not dispute that Defendant needs treatment for his long-standing substance abuse problems. However, the Court concludes that Defendant's need for treatment does not outweigh the danger that he presents to the community if released.

According to prior discussions with Pretrial Services, Defendant was previously placed in a court-ordered in-patient drug treatment program in 2017 by the Superior Court for the District of Columbia. And, Defendant left that program approximately two weeks prior to his discharge date. After a show-cause hearing, Defendant later fully completed a different drug treatment program. But, Defendant's failure to successfully complete the term of his first drug treatment program suggests that trusting Defendant with release to pursue treatment would not be prudent. The Court also notes that Defendant completed his court-ordered in-patient drug treatment program in May of 2017. However, following completion of the in-patient treatment program, Defendant continued to test positive for methamphetamines and/or amphetamines while on pretrial release in the Superior Court for the District of Columbia for this offense. The Court appreciates the difficulties associated with overcoming addiction. However, given the serious charges in this case, the Court cannot ignore Defendant's prior failed treatment attempt.

Moreover, while Defendant's personal use of methamphetamines presents a danger to the community, personal drug use is not the only danger that Defendant presents. Again, the quantity and the purity of the seized drugs suggests that Plaintiff intended to distribute the drugs. While a

drug treatment program has the potential to lessen the likelihood that Defendant will abuse

drugs, the connection between the drug treatment program and Defendant's likelihood of

continuing to traffic drugs is more tenuous. This concern is especially trenchant given that the

District of Columbia Pretrial Services Agency recommended a 30-day residential placement. As

such, after 30 days Defendant would be released back into the community. Accordingly, the

Court concludes that, even with the possibility of a residential treatment program and High

Intensity Supervision, there is no condition or combination of conditions which will ensure the

safety of the community if Defendant were to be released pending trial.

### IV.    CONCLUSION

Upon consideration of all of the evidence and the factors set forth in 18 U.S.C. § 3142(g),

and the possible release conditions set forth in § 3142(c), the Court finds clear and convincing

evidence that Defendant's pretrial release constitutes an unreasonable danger to the community,

and the Court finds clear and convincing evidence that no condition or combination of conditions

can be imposed that would reasonably ensure the safety of the community were he to be released

pending trial.  Defendant has failed to rebut the presumption in favor of pretrial detention

required by § 3142(e)(3)(A).

The Court appreciates that Defendant has been awaiting trial or an alternative disposition

of this case for approximately one year. However, much of the delay in the resolution of this case

is attributable to the competency evaluation conducted at Federal Medical Center, Devens, at

Defense counsel's request. The Court anticipates that this case will now move towards a

resolution with greater speed.

Thus, for the foregoing reasons, it is this 18th day of November, 2019, hereby

**ORDERED** that the Defendant's [40] Renewed Motion for Revocation of the Pretrial Detention Orders is **DENIED**; it is

**FURTHER ORDERED** that Defendant remain detained pursuant to 18 U.S.C. § 3142(e); it is

**FURTHER ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; it is

**FURTHER ORDERED** that Defendant be afforded reasonable opportunity for private consultation with counsel; and it is

**FURTHER ORDERED** that upon order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the person to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

\_\_\_\_/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge